NORTH CAROLINA                    IN THE GENERAL COURT OF JUSTICE
ALAMANCE COUNTY                      SUPERIOR COURT DIVISION
                                              ___ CVS ___

BLAKE M. DICOSOLA,           )
                             )
    Plaintiff,               )
                             )
v.                           )    COMPLAINT
                             )    (Trial by Jury)
IMPACT FULFILLMENT           )
SERVICES, INC.               )
                             )
    Defendant.               )

## PRELIMINARY STATEMENT

1. This action arises from the wrongful actions of Defendant Impact Fulfillment Services, Inc. ("IFS") taken pursuant to its corporate policies and actions taken by and through its president, Andy Mangano, with respect to the retaliatory termination of Plaintiff's employment, and other acts of discrimination and retaliation. Plaintiff asserts claims against the corporate Defendant under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, the ADA Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12101, *et seq.*, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.*, the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2611, *et seq.*, and against the Defendant under state common law for wrongful discharge in violation of state public policy.

## THE PARTIES

2. At all times relevant to this Complaint, Plaintiff Blake DiCosola has been a citizen and resident of Wake County, North Carolina. Plaintiff was an "employee" of Defendant within the meaning of the common law. Plaintiff is a person with a disability under N.C. Gen. Stat. § 168A-3(7) and (7a).

1

3. At all times relevant to this Complaint, Defendant was a corporation organized under the laws of North Carolina, with its registered office and principal place of business in Alamance County, North Carolina. At all times relevant to this Complaint, Defendant did business in the State of North Carolina and was the employer of Plaintiff within the meaning of N.C. Gen. Stat. § 168A-3(2), 42 U.S.C. § 2000e(b), and within the meaning of the common law, and regularly employed more than 50 employees.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter and the parties to this action pursuant to N.C. Gen. Stat. § 1-75.3. Venue is proper in Alamance County under N.C. Gen. Stat. § 1-79, inasmuch as the Defendant is a resident of said county and the violations occurred in said county.

5. On or about October 3, 2014, Plaintiff filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") complaining of age and disability discrimination.

6. The EEOC issued Plaintiff a Notice of Right to Sue dated February 25, 2015.

## FACTS

7. Plaintiff was born in 1955.

8. Plaintiff was employed by Defendant from September 5, 2005 until his termination in July 2014.

9. Until Plaintiff's termination, Plaintiff was employed by Defendant as the Vice President of Logistics.

10. Plaintiff received positive performance evaluations throughout the tenure of his employment with Defendant.

11. In 2010, Plaintiff suffered a stroke during his work with Defendant that caused him to

2

leave work for a temporary period of time.

12. On or about March 11, 2014, Plaintiff began to experience symptoms similar to those experienced during his stroke. Plaintiff's doctor excused him from work due to these symptoms.

13. On March 24, 2014, Plaintiff returned to work following his episode of stroke-related symptoms.

14. On or about April 11, 2014, Plaintiff experienced an episode of weakness, fatigue and irritability, consistent with his prior stroke symptoms. Plaintiff also experienced mental health issues, such as depression, fatigue, anxiety and intermittent confusion. Defendant was sent home that day by temporary VP of Operations Tom Zone. On or about April 14, 2014, Plaintiff was called by company owner and CEO Todd Porterfield and was asked to take time off to recuperate and instructed Plaintiff to file for long-term disability with Defendant's group disability insurance policy Principal Financial Group.

15. Plaintiff was eligible for long-term disability under Defendant's group disability insurance policy with Principal Financial Group exclusively during Plaintiff's period of employment with Defendant.

16. On April 25, 2014, Plaintiff received an email from Defendant's Human Resources Manager, Jodi Tomes, stating that Defendant agreed to pay Plaintiff his regular base salary in the interim during the waiting period for Plaintiff's long-term disability. Ms. Tomes' email stated that, "if for any reason, your disability claim is denied and your twelve week FMLA has been exhausted, [Defendant] and you will decide at that time where your relationship with the company stand[s]."

17. On or about May 13, 2014, while Plaintiff was on leave, Plaintiff received a call from Todd Porterfield, stating that Plaintiff should call his employees and get ready to return to work as

3

soon as possible. Mr. Porterfield stated that Plaintiff's return would be helpful given that Tom Zone, Senior Vice President of Operations, had given notice that he was leaving Defendant in a few days. Mr. Porterfield told Plaintiff that Chris Jackson, a General Manager from Defendant's office in Iowa City who previously reported to Plaintiff, had been helping run the logistics operation for Defendant, but without Mr. Zone and Plaintiff, Defendant would be short-handed. As a result, Mr. Porterfield instructed Plaintiff to contact his direct reports to alert them to Plaintiff's upcoming return and for Plaintiff to get an update on the current state of the business. Plaintiff informed Mr. Porterfield that he could not return to work at that time as he had continuing medical appointments, but may be able to return after the completion of such appointments in June 2014. Mr. Porterfield appeared to the Plaintiff to be disappointed with Plaintiff's decision to continue his period of leave, but did not tell him that he would not be able to return at that time.

18. As a result of Mr. Porterfield's conversation with Plaintiff urging him to return to work, Plaintiff ceased to file for long-term disability per the instructions that Plaintiff received from Defendant to pursue Family and Medical Leave. Defendant's Human Resources sent Plaintiff the application for Family and Medical Leave and instructed Plaintiff to file a leave request for the dates of April 12, 2014 until August 7, 2014.

19. On May 19, 2014, Plaintiff filed an application for Family and Medical Leave for a leave period beginning on April 12, 2014 and ending on August 7, 2014. Plaintiff received Family and Medical Leave approval in a letter dated May 28, 2014.

20. On May 21, 2014, in response to Mr. Porterfield's request, Plaintiff called three of his direct reports. Plaintiff spoke to Kent Long, Randy Watkins, and Nicole Kelly and informed them of Plaintiff's conversation with Mr. Porterfield and his plans to return to work after pending

4

medical appointments.

21. Around June 25, 2014, less than two weeks before the expiration of Plaintiff's Family and Medical Leave period, Plaintiff was informed by Defendant's new President, Andy Mangano, that Plaintiff's position was no longer available at the company and there were no other positions that met Plaintiff's qualifications or pay grade.

22. Mr. Mangano informed Plaintiff of layoffs at Defendant's business despite the recent acquisition of a lucrative business contract that would increase the profitability of Defendant's business.

23. On July 3, 2014, Plaintiff received a written letter from Mr. Mangano, stating that Defendant had received notice of Plaintiff's plan to return to work on July 7, 2014, the first business day after his leave ended, and to reiterate that Plaintiff's position was eliminated and there was no position available for Plaintiff.

24. On July 3, 2014, Ms. Tomes informed Plaintiff that he was no longer an employee of Defendant and that if he returned to work the security department would escort him off Defendant's property.

25. On July 7, 2014, Plaintiff was ready for and had prepared to return to work, but was unable to in light of Defendant's communications that he was no longer an employee and would be removed from Defendant's premises if he attempted to return to work.

26. Upon information and belief, the job requirements previously performed by Plaintiff prior to Defendant's alleged reorganization are now being performed by Chris Jackson, Vice President of Quality for Defendant, who was promoted to this role in August 2014.

27. Upon information and belief, the job requirements previously performed by Plaintiff prior to Defendant's alleged reorganization are now being performed by another employee(s) of

5

Defendant, either in an identical or substantially similar position to that formerly occupied by Plaintiff.

## FIRST CAUSE OF ACTION
## (ADA & ADAAA)

28. The foregoing allegations of this Complaint are incorporated by reference as if fully set forth herein.

29. More than thirty days prior to the institution of this lawsuit, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging violations of Title I of the ADA and the ADAAA by Defendant. All conditions precedent to this lawsuit have been fulfilled, including the timely filing of a charge of employment discrimination and an attempt to conciliate the charge.

30. At all times relevant herein, Plaintiff was "disabled," within the ADAAA. Plaintiff had a physical or mental impairment that substantially limited one or more major life activities, namely, the operation of Plaintiff's neurological system. Stroke is a recognized disability under the ADAAA.

31. Since about April 2014, Defendant has engaged in unlawful employment practices, in violation of Section 102(a) of the ADA, 42 U.S.C. § 12112(a). Namely:

   A. Defendant discriminated against Plaintiff because of his disability. Defendant discriminated against the Plaintiff by terminating the Plaintiff's employment on the basis of the Plaintiff's disability. Defendant did not engage in the interactive process with Plaintiff to determine whether there were reasonable accommodations which would allow Plaintiff to perform the essential functions of his position.

   B. Defendant discriminated against Plaintiff in that Defendant regarded Plaintiff's stroke as

substantially limiting him in major life activities of the operation of a major bodily function and accordingly discriminated against Plaintiff's perceived disability by terminating Plaintiff's employment with Defendant.

32. At all times relevant herein, Plaintiff was a "qualified individual with a disability," in that with or without "reasonable accommodation," Plaintiff could perform the essential functions of his employment position.

33. The effect of these unlawful practices has been to deprive Plaintiff of equal employment opportunities, and to otherwise adversely affect his employment status as an employee because of his disability.

34. Defendant had no legitimate non-discriminatory reason for its adverse employment action against the Plaintiff.

35. Upon information and belief, the acts as alleged herein were committed against Plaintiff with malice or reckless indifference to the Plaintiff's protected rights.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE FMLA

36. The foregoing allegations of this Complaint are incorporated by reference as if fully set forth herein.

37. Defendant employs over 50 employees, bringing Defendant within the scope of the FMLA.

38. Plaintiff is an eligible employee within the meaning of 29 U.S.C. § 2611(2) in that Plaintiff worked for Defendant for a period of at least 12 months and for at least 1,250 hours of service for Defendant within the previous 12 months prior to his entitlement for Family and Medical leave.

7

39. Defendant is an employer within the meaning of 29 U.S.C. § 2611(4) in that it is engaged in commerce and employs more than 50 employees for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year.

40. Defendant interfered with Plaintiff's rights under the FMLA by retaliating against his exercise of his right to take FMLA leave, in violation of 29 U.S.C. § 2615(a). Plaintiff was on approved FMLA leave for a serious health condition when he was terminated by Defendant.

41. By terminating Plaintiff from his employment during Plaintiff's valid leave, Defendant violated Plaintiff's rights under the FMLA, 29 U.S.C. § 2601, *et seq.*, specifically § 2615(a).

42. As a result of Defendant's unlawful conduct, Plaintiff has suffered damages, including lost wages and employment benefits.

43. Plaintiff is entitled to liquidated damages pursuant to 29 U.S.C. § 2617.

44. Defendant refused to correct its violation of the FMLA.

45. Defendant has exhibited willful and wanton disregard for Plaintiff's rights under the FMLA.

## THIRD CAUSE OF ACTION
## VIOLATION OF THE ADEA

46. The foregoing allegations of this Complaint are incorporated by reference as if fully set forth herein.

47. At all times relevant to this Complaint, Plaintiff was between the ages of 58 and 59 years of age.

48. Defendant wrongfully and intentionally discriminated against Plaintiff on account of his age in violation of the ADEA in discharging the Plaintiff and establishing pretextual grounds for eliminating Plaintiff's position.

8

49. Defendant had no legitimate non-discriminatory reason for its adverse employment actions against the Plaintiff.

50. As a proximate result of Defendant's illegal acts of age discrimination against Plaintiff, Plaintiff has suffered substantial damages and is entitled to appropriate relief pursuant to the ADEA, and attorneys' fees for his representation herein.

51. Upon information and belief, the acts as alleged herein, were committed against the Plaintiff with malice or reckless indifference to the rights as addressed in the ADEA.

## FOURTH CAUSE OF ACTION
## WRONGFUL DISCHARGE BASED ON VIOLATION OF PUBLIC POLICY

52. The foregoing allegations of this Complaint are incorporated by reference as if fully set forth herein.

53. Defendant's termination of Plaintiff's employment was for unlawful reasons and purposes that contravene North Carolina public policy.

   A. Discrimination on the basis of handicap as set forth by the legislature in N.C. Gen. Stat. § 143-422.1, *et seq.*, and N.C. Gen. Stat 168A-1, *et seq.* Plaintiff is protected under public policy against disability discrimination in that he is a disabled individual. Plaintiff (a) was impaired in such a way that significantly affected his ability to perform major life activities; (b) had a record of his neurological impairment; and/or (c) Defendant regarded Plaintiff as having a neurological impairment. Defendant discriminated against Plaintiff in violation of public policy by terminating him because he was a disabled individual, had a record of a disability, and/or was regarded by Defendant as disabled, and by failing to continue to provide employment which he could perform with or without reasonable accommodation.

9

B. Discrimination on the basis of age as set forth by the legislature in N.C. Gen. Stat. § 143-422.1, et seq. Plaintiff is protected under public policy against age discrimination in that he is an individual over forty years of age.

54. Defendant's actions in discharging Plaintiff were taken with malice or with reckless indifference to Plaintiff's rights.

55. As a result of Plaintiff's wrongful discharge, Plaintiff has suffered emotional pain, damage to his reputation, deterioration of his emotional and physical health, and loss of enjoyment of life; has lost compensation and tangible job benefits; has sustained and will continue to sustain irreparable injury; and other damages in excess of $25,000.

56. Plaintiff is entitled to back pay, front pay, compensatory and punitive damages, and such other relief as the court shall deem proper.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF PRAYS:

1. That Plaintiff recover of Defendant in excess of $25,000 as compensatory damages;

2. That Plaintiff recover punitive damages of the Defendant in excess of $25,000;

3. That Plaintiff be granted trial by jury;

4. That Plaintiff recover of the Defendant reasonable costs and expenses, including attorney fees, in bringing this action;

5. That Plaintiff recover of Defendant liquidated damages pursuant to 29 U.S.C. § 2617.

6. For such other and further relief as to the Court seems just and proper.

This the 26th day of May, 2015.

                                              Taibi Kornbluth Law Group, P.A.

                                              Michael A. Kornbluth
                                              Attorney for Plaintiff
                                              N.C. Bar No. 27928
                                              Email: MAK@TKLawNC.com
                                              3100 Tower Boulevard, Suite 800
                                              Durham, North Carolina 27707
                                              Telephone: (919) 401-4100
                                              Facsimile: (919) 401-4104